# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GARY L. MOCK,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:04-cv-1415-Or-28DAB**

**BELL HELICOPTER TEXTRON, INC.,**

**Defendant.**

_____

# ORDER

This cause is before the Court following a trial on Plaintiff's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., for wrongful termination.  The trial was bifurcated into liability and damages phases; the liability phase was tried to a jury and the damages phase, by agreement of the parties, was tried to the Court.  At the conclusion of the liability phase, the jury returned a verdict in Plaintiff's favor, finding that Plaintiff's age was a substantial or motivating factor that prompted Defendant to terminate Plaintiff's employment and that Defendant "willfully" violated the law. (Verdict, Doc. 155).

The case is now before the Court for a determination of what remedies should be awarded to Plaintiff.  The parties presented evidence and witnesses to the Court on April 30 and May 1, 2007.  Thereafter, each side submitted proposed findings of fact and law. (Docs. 208 & 213).  Having considered the evidence and the parties' submissions, the Court now makes the following rulings.

I.  Background

Plaintiff Gary Mock ("Mock") was hired by Defendant Bell Helicopter Textron, Inc. ("Bell"), a manufacturer and seller of helicopters, in 1996.  After working as an instructor pilot for Bell, in November 2000 Mock applied for and obtained the position of regional sales manager ("RSM") for Bell's Southeast region.  On February 23, 2003, Mock was terminated by Bell, allegedly due to unsatisfactory performance.  However, the jury found that Mock's age – 55 years at the time of his termination – was a motivating factor in Bell's decision to terminate him.

Mock was unemployed for several months, but in July 2003 he obtained a job at Pegasus Technologies, Inc. ("Pegasus") as a helicopter pilot.  He remained employed at Pegasus as of the time of trial.  Although Mock declined at trial to reveal the details of his work responsibilities at Pegasus, his general description of them leads the Court to believe that Pegasus is a civilian contractor engaged in activities in Iraq or Afghanistan.

II.  Remedies

As remedies for the discrimination that the jury determined that Mock was subjected to by Bell, Mock seeks back pay, lost benefits, liquidated damages, and reinstatement.  As an alternative to reinstatement, Mock seeks an award of front pay.  These items of requested relief are addressed in turn.

A.  Back Pay

While Bell acknowledges Mock's entitlement to back pay in light of the jury's verdict, the parties disagree in many respects with regard to the proper measure of back pay.  The

issues include the period for which back pay should be awarded, whether Mock made reasonable efforts to mitigate his damages, and what elements of compensation should be included in the back pay award.  After the resolution of these issues, the Court sets forth its computation of the back pay that shall be awarded.

     1.  <u>After-Acquired Evidence</u>

     In its proposed findings, Bell continues to suggest that Mock would have been terminated by Bell regardless of his age once Bell discovered that Mock allegedly misrepresented his college credits on his employment application.  (<u>See, e.g.</u>, Doc. 213 at 8-9).  Based on this "after-acquired evidence," Bell maintains that Mock's back pay award should be limited to the time period before Bell learned of the alleged misrepresentation. <u>See, e.g.</u>, <u>McKennon v. Nashville Banner Publ'g Co.</u>, 513 U.S. 352, 362-63 (1995) (holding that an employer may rely on after-acquired evidence of wrongdoing to limit damages if the employer shows "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge").

     However, the Court has already ruled on this issue.  The Court rejected Bell's after-acquired evidence argument orally during the damages phase of the trial, concluding that Bell had not met its burden under <u>McKennon</u>.  (<u>See</u> Trial Tr., May 1, 2007, Doc. 207 at 145-49).  Further elaboration of this ruling is not necessary here.

     2.  <u>Mitigation of Damages and Comparability of Employment</u>

     "The purpose of relief under the federal employment anti-discrimination laws is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'

Consistent with this concept, once liability for . . . discharge on the basis of age is established, the injured victim is presumptively entitled to back pay from the date of the discriminatory discharge until the date of judgment, unless the victim obtains or could have obtained substantially equivalent work before that time." EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1251 (11th Cir. 1997) (citations omitted).  "While the injured victim has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment, the burden of proving lack of diligence is on the employer." Id. at 1251-52; accord Hudson v. Chertoff, 473 F. Supp. 2d 1292, 1297 (S.D. Fla. 2007) ("Although a plaintiff is not required to be successful in mitigating his damages, he must make a reasonable, good faith effort to mitigate.  Generally, the burden regarding mitigation requires the defendant to prove that substantially equivalent work was available and that the employee did not use reasonable diligence to obtain it.") (citations omitted).

Bell argues that Mock was not reasonably diligent in seeking substantially equivalent work and that thus he has not satisfied his duty to mitigate damages.  Mock, on the other hand, agrees that the job he obtained at Pegasus is not "substantially equivalent" to his job at Bell, but he attempts to argue this point in *his* favor by contending that because the work at Pegasus is different, not all of his earnings at Pegasus should be deducted in the calculation of his "net loss" in earnings.  Neither side's argument is persuasive.

Bell has not met its burden of establishing that Mock did not mitigate his damages. Assessment of efforts to find substantially equivalent employment must, of course, take into account the availability of such positions.  There are a limited number of companies engaged in the sale of helicopters in the United States, and consequently, helicopter sales positions

do not often become available.  Companies selling helicopters in the United States include Sikorsky, Edwards & Associates, Augusta, and Eurocopter.  The evidence presented at trial revealed that since Mock's termination, two helicopter sales positions have become available with Bell competitors – one with Sikorsky and the other with Augusta.  Mock did not apply for either position, and both were filled by former Bell colleagues.  Mock testified that he did not apply for the opening at Sikorsky because he did not know about the opening.  (Trial Tr., May 1, 2007, Doc. 207 at 33-34).[1]  Mock also testified that in spite of efforts to be informed of sales jobs in the industry, he was unaware of an opening at Augusta.  (Id. at 32).  That job also would have required him to relocate to the Northeast, something he was unwilling to do. (Id.)

As conceded by Bell, Mock did make some efforts to obtain comparable employment. (See Def.'s Proposed Findings, Doc. 213 at 2).  He testified that he asked former colleagues, including the one who obtained the Sikorsky position, about potential job opportunities at Sikorsky and elsewhere in the industry.  (Trial Tr., Apr. 30, 2007, Doc. 206 at 33-34).  Mock further testified that he networked with friends who are pilots and that he searched the Internet for job openings.  (Id. at 34).  He also networked through helicopter-related organizations to which he belongs.  (Id. at 36).  The Court concludes that Mock's efforts to find comparable employment – though perhaps not as extensive as they could have been – were not unreasonable, and Bell has not met its burden of showing a failure to mitigate damages.

_____

[1]At the time that Sikorsky position became available, Mock was already working at Pegasus.  (See Trial Tr., May 1, 2007, Doc. 207 at 33).

The parties also disagree on the correct method of calculating back pay.  Generally, in calculating back pay the plaintiff's lost earnings are offset by the amount earned through subsequent employment.  However, the parties here dispute the inclusion of "non-base" pay – Bell contending that Mock should not be awarded any lost potential bonus pay from Bell because such earnings are too speculative, and Mock arguing that only his base pay at Pegasus (but not other pay such as bonuses and hazard-type pay)[2] should be included as an offset to his lost Bell earnings.  The Court rejects both parties' arguments and shall include all types of pay from both jobs in computing the back pay award.

First, with regard to Bell's argument, although bonus computation can be speculative, a projected bonus amount can be extrapolated from the record.  Second, the Court sees no basis to afford Mock a monetary windfall based on his contention that his job duties and opportunities at Pegasus are not "substantially equivalent" to those at his former job at Bell.  In calculating Mock's net loss, all of his Pegasus earnings will be deducted.  See, e.g., Johnson v. Martin, 473 F.3d 220, 222 (5th Cir. 2006) ("In the context of the [ADEA], courts must offset lost wage awards with post-termination earnings.  Under the ADEA, '[c]ourts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards.'") (quoting Stephens v. C.I.T. Group/Equip. Fin., Inc., 955 F.2d 1023, 1028 (5th Cir. 1992)) (alteration in original); see also Eleventh Cir. Pattern Jury Instructions (Civil Cases), Federal Claims Instruction 1.4.1 (2005) (providing, in ADEA cases,

---

[2]At Pegasus, Mock earns a base amount as well as additional pay in such categories as "living conditions pay," "flight pay," and "overseas bonus."  (See, e.g., Trial Tr., Apr. 30, 2007, Doc. 206 at 76).

that Plaintiff is required "to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage" and that damages are to be Plaintiff's "net loss"); cf. Ford Motor Co. v. EEOC, 458 U.S. 219, 231 n.16 (1982) (noting that "[i]f the claimant decides to go into a dissimilar line of work, or to accept a demotion, his earnings must be deducted from any eventual backpay award"); 42 U.S.C. § 2000e-5(g)(1) (Title VII provision that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable).[3]

### 3.  Calculation of Back Pay

When Mock worked as an RSM at Bell, his compensation structure consisted of both a base salary and a bonus plan.  Mock presented evidence as to the following annual earnings amounts during his last few years at Bell:

| Year | Base Salary | Bonus | Total W-2 Income |
|------|-------------|-------|------------------|
| 1999 (instructor pilot) | N/A | N/A | $67,076.49 |
| 2000 (instructor pilot) | N/A | N/A | $69,504.75 |
| 2001 (RSM) | $69,451.20 | $55,315.08 | $124,766.28 |
| 2002 (RSM) | $70,657.60 | $54,280.54 | $124,938.14 |

---

[3]The Court rejects out of hand Mock's argument that the Court should analogize to NLRB cases and not deduct all of his interim earnings in the back pay calculation.  (See Pl.'s Proposed Findings, Doc. 208 at 30-31 (citing cases)).  In any event, the NLRB cases that Mock cites are distinguishable on their facts from the case at bar.  (See id. and cases cited therein).

| 2003 (RSM) | $70,668 (projected) | ------- | $35,647.69 (was terminated February 2003) |
|---|---|---|---|

(See Pl.'s E's. 41 (Mock's Fourth Quarter 2001 Incentive Compensation Recap), 46 (Mock's Job Data Printout Showing Compensation at Time of Discharge, 49, 50-53 (Mock's W-2 Earnings Information for 1999-2003), & 54 (Mock's Fourth Quarter 2002 Incentive Compensation Recap); Trial Tr., Apr. 30, 2007, Doc. 206 at 68).   The evidence presented shows that Mock's earnings at Pegasus have been as follows:

| Year | Total W-2 Income |
|---|---|
| 2003 | $36,984.78 |
| 2004 | $96,813.17 |
| 2005 | $101, 852.91 |
| 2006 | $134,486.64 |

(See Pl.'s E's. 49a (Mock's 2003 W-2 from Pegasus), 48 (Mock's 2004 W-2), & 47 (Mock's 2005 & 2006 W-2s)).

Mock seeks to rely on the earnings of his replacement at Bell, Craig Allison, as a basis for determining his lost earnings.  However, the Court rejects Allison's earnings as the appropriate measure of lost earnings and concludes that a more reasonable measure of such losses is Mock's own earnings history at Bell.  Although he was only in the RSM position for just over two years, his earnings data provides a sufficient and, in the Court's view, a more reliable basis for calculating prospective earnings.  See, e.g., Under v. Consol. Foods Corp., 657 F.2d 909, 919 (7th Cir. 1981) (finding no abuse of discretion in district court's calculation of back pay by using "plaintiff's sales earnings as opposed to use of her

successor's sales record," noting district court's mention of "the highly speculative and personal nature of sales"), <u>vacated on other grounds</u>, 456 U.S. 1002 (1982).

Mock's back pay shall be calculated using averages of Mock's salary raises and bonus earnings.[4]  His average base salary increase – using the two years for which there is data, 2001 and 2002 – was .85%.  Mock's average annual bonus earned at Bell – again using 2001 and 2002 data – was $54,797.81.[5]  Thus, the Court computes the following projected earnings for Mock at Bell had he not been terminated:

| Year | Base Salary | Bonus | Projected Total |
|------|-------------|-------|-----------------|
| 2003 | $70,668 | $54,797.81 | $125,465.81 |
| 2004 | $71,268.68 | $54,797.81 | $126,066.49 |
| 2005 | $71,874.46 | $54,797.81 | $126,672.27 |
| 2006 | $72,485.39 | $54,797.81 | $127,283.20 |
| 2007 | $73,101.52 | $54,797.81 | $127,899.33 |

Comparing actual income to projected income yields the annual differences:

| Year | Projected Total | Actual Earnings | Difference |
|------|-----------------|-----------------|------------|
| 2003 | $125,465.81 | $72,632.47[6] | $52,833.34 |
| 2004 | $126,066.49 | $96,813.17 | $29,253.32 |
| 2005 | $126,672.27 | $101,852.91 | $24,819.36 |

---

[4]Mock acknowledges that "[a] district court may properly exercise its discretion by using averages in computing the back pay."  (Pl.'s Trial Br. on Damages, Doc. 191 at 3).

[5]($55,315.08 + $54,280.54)/2 = $54,797.81.   Although Mock's bonus earnings dropped slightly from 2001 to 2002, the Court will not project a continuing drop in bonus earnings from year to year, instead averaging the two bonus amounts.

[6]This amount represents Mock's 2003 earnings at Bell and Pegasus combined.

| 2006 | $127,283.20 | $134,486.64 | ($7,203.44) |

Back pay shall be awarded for the years 2003, 2004, and 2005.  However, because Mock earned more in 2006 through his employment with Pegasus than his projected earnings at Bell, no back pay shall be awarded for 2006 or any year thereafter.  See Stephens v. C.I.T. Group/Equip. Fin., Inc., 955 F.2d 1023, 1029 (5th Cir. 1992) ("[D]amages are 'settled and complete' and the back pay period ends, when the plaintiff begins earning more at his new job than he did at the job from which he was discharged.").  Mock has succeeded in obtaining employment affording him comparable compensation; a further award of back pay is not necessary.  The total back pay award (before the addition of prejudgment interest) shall be $52,833.34 + $29,253.32 + $24,819.36 = $106,906.02.

4.  Prejudgment Interest

Mock seeks prejudgment interest on the back pay award, and Bell agrees that Mock is entitled to prejudgment interest.  (See Def.'s Proposed Findings, Doc. 213 at 24).  Thus, prejudgment interest shall be awarded on the back pay award.  See also Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094, 1101 (11th Cir. 1987) (finding "that prejudgment interest is available as a remedy in ADEA cases and that the district court did not abuse its discretion by awarding prejudgment interest").  Neither party has submitted a proposed prejudgment interest rate or offered any guidance on what rate should be used.  The Court determines that the post-judgment interest rate prescribed by 28 U.S.C. § 1961 shall be used in the calculation of prejudgment interest.[7]

_____

[7]In McKelvy v. Metal Container Corp., 854 F.2d 448, 453 (11th Cir. 1988), the

The Court has calculated interest using the post-judgment interest rate in effect at the beginning of the year following the year for which back pay is being awarded, and the interest has been compounded annually.  In other words, the back pay awarded for 2003 shall be awarded as of December 31, 2003, and interest shall accrue on the 2003 amount during 2004 at the rate in effect at the beginning of January 2004.  That interest shall be added to the 2003 award.  The total 2003 award, plus the 2004 back pay amount, combined, will then accrue interest during 2005 at the rate in effect in early January 2005, and so on, up until the date of judgment.  These calculations are set forth in the following chart:

| Back Pay Year/ Interest Year | Back Pay Amount | Running Total – Back Pay Plus Prior Year's Total | Interest Rate and Date of Rate | Interest Amount | Running Total – Back Pay Plus Interest |
|---|---|---|---|---|---|
| 2003/2004 | $52,833.34 | N/A | 1.29% 01/02/2004 | $681.55 | $53,514.89 |
| 2004/2005 | $29,253.32 | $82,768.21 | 2.82% 01/07/2005 | $2334.06 | $85,102.27 |
| 2005/2006 | $24,819.36 | $109,921.63 | 4.37% 01/06/2006 | $4803.58 | $114,725.21 |

The totals are as follows:

_____

Eleventh Circuit held that the applicable prejudgment interest rate in ADEA cases "depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961." (Citing <u>EEOC v. Guardian Pools, Inc.</u>, 828 F.2d 1507 (11th Cir. 1987)).  However, the court reached that conclusion at a time when post-judgment rates of interest were determined by the IRS prime rates.  <u>See</u> <u>Guardian Pools</u>, 828 F.2d at 1512-13.  To apply the IRS "prime rates" today would result in a prejudgment interest rate that is substantially higher than the post-judgment interest rate provided for by the current version of 28 U.S.C. § 1961(a), which directs use of a fluctuating rate "equal to the weekly average 1-year constant maturity Treasury yield."  This would lead to an absurd result.  The Court concludes that <u>McKelvy</u> no longer dictates the use of "IRS prime rates" for prejudgment interest in ADEA cases.  Use of the post-judgment rate – as currently determined – is more appropriate.

        Total back pay: $106,906.02
        Total prejudgment interest through 12/31/2006: $7819.19
        Total back pay plus interest through 12/31/2006: $114,725.21

The prejudgment interest rate for 2007 (01/05/2007) is 4.98%.  Interest has accrued on $114,725.21 in 2007 at the rate of $15.65 per day.  Through September 24, 2007, the prejudgment interest amount for 2007 is $4178.55.  Total prejudgment interest is thus $11,997.74.

B.  Lost Benefits

        The only lost benefits that Mock seeks are lost retirement benefits.  However, the Court has no basis on which to award lost retirement benefits because Mock did not present evidence to quantify the amount of any such lost benefits.  At trial, he introduced a "Notice of Vested Benefits" letter (Pl.'s Ex. 56) from a retirement consultant at Bell.  This letter states that Mock is "entitled to a vested retirement benefit" from Bell's retirement plan in the amount of $639.71 per month beginning on October 1, 2012.  (Id.).  This is the only evidence that Mock presented at trial other than to file the entire retirement plan itself (Pl.'s Ex. 35).  No testimony regarding lost benefits or change in benefits was presented at trial except for Mock's testimony that he received the "vested benefits" letter and his identification of the retirement plan.  (Trial Tr., Apr. 30, 2007, Doc. 206 at 60-61).  The Court ruled that  Mock was competent to testify as to "what his credited service time [at Bell] would be at any particular date, just as the court would be able to do it using a calendar."  (Id. at 64-65).  However, the Court also ruled that if Mock's counsel "plan[ned] on relying on these documents, [he would] have to present them in a more formal and complete way."  (Id. at 65).  Counsel never did so.

-12-

Although the vested benefits letter (Pl.'s Ex. 56) and the retirement plan (Pl.'s Ex. 35) were ultimately admitted into evidence, they do not provide a sound basis for the calculation of lost retirement benefits.  Mock testified that with his new employer, Pegasus, there is a 401(k) Plan; he referred to this plan as a "savings plan" rather than a "retirement plan."  He did not present any evidence as to whether those benefits were better or worse than the benefits he allegedly would have obtained at Bell.

In his proposed findings, Mock attempts to present a calculation as to change in benefits, and he seeks $634,320 in lost pension payments – a calculation that is based on an increase in his pension benefit from the $639.71 per month noted in his vested benefits letter (Pl.'s Ex. 56) to $5925.70 per month, an almost *tenfold* increase.  (See Doc. 208 at 23). However, the Court rejects this proposal and finds that Mock did not properly present evidence supporting an award of lost retirement benefits.

It would not be fair to Bell to allow Mock to attempt to quantify these damages at this stage of the proceedings; Bell has not had a meaningful opportunity to challenge Mock's proposed calculations.  Although in his Complaint Mock did list, very generally, "lost wages and other employment benefits" among the remedies sought (see Doc. 1 at 4-5), he did not list any lost benefits in the "Damages" list attached to the final pretrial statement.  (See Ex. E to Joint Pretrial Statement, Doc. 64, at 64-6 (listing only back pay, front pay, and liquidated damages as damages sought)).[8]  In his "Trial Brief on Damages" (Doc. 191), which was filed

_____

[8]Local Rule 3.06(c)(7) requires that the pretrial statement contain, "in cases in which any party claims money damages, a statement of the elements of each such claim and the amount being sought with respect to each such element."  Moreover, "[t]he pretrial statement . . . control[s] the course of the trial and may not be amended except by order of the Court

after the liability phase but before the damages phase of the trial, Mock did note that an award of back pay may include the value of "fringe benefits" including health insurance coverage and vacation pay (see Doc. 191 at 2), but nowhere did Mock mention lost retirement benefits or an intention to seek recovery of those benefits, (see generally Doc. 191). Additionally, Mock did not present an expert or other witness to quantify lost retirement benefits, thus depriving Bell of an opportunity to challenge any calculation amount or method. In sum, even if Mock had listed his retirement benefits as an element of damages in the Pretrial Statement, which he did not, this eleventh-hour attempt to quantify them via argument is too little, too late. No lost retirement benefits will be awarded.

### C.  Liquidated Damages

During the liability phase of the trial, the jury found that Bell acted willfully in terminating Mock on the basis of his age. (See Verdict, Doc. 155). The ADEA "provides for liquidated damages where a finding of willful violation is made." Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1561 (11th Cir. 1988). Such liquidated damages consist of double the back pay amount. See, e.g., Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1340 (11th Cir. 1999); Waldrop v. S. Co. Servs., Inc., 24 F.3d 152, 157 n.6 (11th Cir. 1994). Thus, the Court shall award Mock liquidated damages in the amount of $106,906.02.[9]

---

in the furtherance of justice." Local Rule 3.06(e).

[9]The Eleventh Circuit has held that both prejudgment interest and liquidated damages are recoverable in an ADEA case. See Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094, 1101-02 (11th Cir. 1987). However, this Court sees no justification for awarding prejudgment interest *on* the liquidated damage amount itself. Thus, the liquidated damage award consists of the back pay amount without the prejudgment interest.

### D.  Reinstatement and Front Pay

The relief granted in an ADEA case can include reinstatement or an award of front pay.  See 29 U.S.C. § 626(b) (providing that appropriate relief may include, inter alia, "judgments compelling employment, reinstatement or promotion").    Mock seeks reinstatement at Bell and in the alternative requests an award of front pay.  Bell opposes both of these forms of relief.

"The ADEA accords the district court broad remedial authority 'to grant such legal or equitable relief as may be appropriate to effectuate the purposes of'" the Act.  Munoz, 223 F.3d at 1349 (quoting 29 U.S.C. § 626(b)); accord Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1052 (11th Cir. 1989) ("The district court has broad discretion in selecting remedies as long as the relief granted is consistent with the purposes of the ADEA."). However, "[i]f a trial court refuses to grant further legal or equitable relief to a plaintiff who insists that such relief is necessary to make the plaintiff whole, it must articulate its rationale." Id.; accord Wilson v. S & L Acquisition Co., 940 F.2d 1429, 1438 (11th Cir. 1991).

The Court concludes that reinstatement is not appropriate in this case.  The record evidence reveals that the duties of the sales position that Mock formerly held at Bell are now handled by an employee of one of Bell's affiliates.  (See Trial Tr., Mar. 23, 2007, Doc. 166 at 995 (Test. of Daniel Berndt)).  That employee, Daniel Berndt, testified that he now handles the sales in Florida and Georgia formerly handles by Mock's replacement, Craig Allison. (See id.)  There is no evidence that this shift in duties to an affiliate is in any way connected to this lawsuit, especially considering, as conceded by Mock, that he did not request reinstatement when he first filed suit.  (See Trial Tr., May 1, 2007, Doc. 207 at 39-40 (Test.

of Gary Mock); <u>see also</u> Compl., Doc. 1, at 4-5 (setting forth relief sought but not mentioning reinstatement)); <u>cf.</u> <u>Fester v. Farmer Bros. Co.</u>, 49 Fed. Appx. 785, 794 (10th Cir. 2002) (finding no abuse of discretion in the ordering of reinstatement despite elimination of plaintiff's position where there was evidence that availability of the position was "tied to ADEA litigation strategy rather than need").  Although Mock has expressed a desire to be reinstated, he acknowledged at trial that there are "issues" that would be involved in such reinstatement and he would "have to rebuild the customer base as well as the territory again, which would take a couple of years." (Trial Tr., May 1, 2007, Doc. 207 at 18-19).  And, even though the jury rejected Bell's theory that Mock was terminated due to poor performance and customer complaints, Mock himself has acknowledged that before he was terminated, some of Bell's customers refused to allow Mock to call on them; accordingly, Mock explained, if he were rehired someone else – perhaps his boss – would have to handle those accounts. (Trial Tr., May 1, 2007, Doc. 207 at 38).  Considering the lack of evidence of an available position, the problems attendant to Mock's return to Bell, and animosity between the parties, the Court concludes that reinstatement is not feasible here.  <u>See, e.g.,</u> <u>Ray v. Iuka Special Mun. Separate Sch. Dist.</u>, 51 F.3d 1246, 1253-55 (5th Cir. 1995) (affirming district court's denial of reinstatement and noting that permissible factors in the decision to deny reinstatement included lack of vacancies, fact that reinstatement would have required displacement of existing employee, fact that plaintiff was able to secure other employment shortly after he was not rehired by defendant, and discord that would result from reinstatement).  Mock's request for reinstatement is thus denied.

In the alternative to reinstatement, Mock seeks an award of front pay.  "'No per se

rule governs the appropriateness of front pay damages in a particular case. . . . Ultimately, the question to be answered is whether front pay damages are needed in a particular case to make the plaintiff whole.'" <u>Arban v. West Publ'g Corp.</u>, 345 F.3d 390, 406 (6th Cir. 2003) (quoting <u>Wilson v. Int'l Bhd. of Teamsters</u>, 83 F.2d 747, 756-57 (6th Cir. 1996)) (alteration in original).  "The fact that reinstatement is inappropriate, however, does not mean that an award of front pay is required."  <u>Id.</u>  As noted in conjunction with the calculation of back pay earlier, Mock now earns more than his projected Bell earnings.  An award of front pay is not necessary to make him whole.

### E.  Total Award

In sum, the Court finds that Mock is entitled to an award of back pay for the years 2003, 2004, and 2005, plus prejudgment interest.  Additionally, in light of the jury's finding of willfulness, Mock is also entitled to liquidated damages in the amount of the back pay award without prejudgment interest.  However, neither reinstatement nor front pay is warranted.  The total damages award is $225,809.78, which sum consists of back pay of $106,906.02; prejudgment interest on the back pay award in the amount of $11,997.74; and liquidated damages of $106,906.02.

### III.  Conclusion

It is hereby **ORDERED** and **ADJUDGED** as follows:

1.  Defendant's ore tenus motion for judgment as a matter of law as to liability (<u>see</u> Doc. 149) is **DENIED**.

2.  Plaintiff's Motion for Injunctive Relief (Doc. 158) – to prohibit Defendant from filling Plaintiff's position pending resolution of the reinstatement issue – is **DENIED as moot**.

3.  Plaintiff's ore tenus motion to strike Defendant's after-acquired evidence defense (see Doc. 199) is **DENIED**.

4.  Plaintiff's Motion for Leave to File a Corrected Plaintiff's Proposed Findings of Fact and Conclusions of Law (Doc. 212) is **DENIED**.

5.  The Clerk is directed to enter a judgment providing that Plaintiff Gary L. Mock shall recover the sum of $225,809.78 from Defendant Bell Helicopter Textron, Inc., which sum shall bear interest from the date of judgment at the statutory rate.  Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 24th day of September, 2007.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party